UNITED STATES of America, Plaintiff,

v.

CERTAIN REAL PROPERTY LOCATED AT 750 EAST SHORE DRIVE, WHITMORE LAKE, WASHTENAW COUNTY, MICHIGAN, Together with all of its Fixtures, Improvements and Appurtenances, Defendant.

Civ. A. No. 91–74974.

United States District Court, E.D. Michigan, S.D.

Sept. 22, 1992.

---

Stephen J. Markman, U.S. Atty. by Joyce Todd, Asst. U.S. Atty., Detroit, Mich., for U.S.

Michael C. Moran, Stein, Moran, Ann Arbor, Mich., for Titus.

### ORDER GRANTING IN PART CLAIMANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

The government filed a complaint seeking civil forfeiture of the residence of Stephen Titus under 21 U.S.C. § 881. On October 12, 1991, claimants Charles and Marian Titus, Stephen Titus' parents, filed an answer to the complaint and a claim to the property to the extent of an unrecorded mortgage. Claimants filed the instant motion for summary judgment July 20, 1992; the government filed a response July 27, 1992; and claimants filed a reply August 5, 1992. Oral argument was heard September 17, 1992.

### BACKGROUND FACTS

On September 5, 1990, claimants executed a document which memorialized a monetary loan to their son Stephen. The document specifies a loan amount, $60,000.00; an interest rate, 5% compounded monthly; and a payment schedule, $400 per month beginning February 1, 1994. The document states that the loan is secured "with the deed to [Stephen's] property at 750 East Shore Drive, Whitmore Lake, MI as collateral." Claimants' ex. A, part B. The document is dated and bears the signatures of Charles, Marian and Stephen Titus; however, the document was never recorded.

One year later, on September 11, 1991, police officers participating in "Operation Hemp" were flying in a helicopter over an area around Whitmore Lake. The officers observed marijuana plants growing on the subject property and relayed this information to officers on the ground, who subsequently found marijuana drying on a ladder inside Stephen's residence. On May 20, 1992, Stephen pleaded guilty to a misdemeanor charge of growing marijuana "without remuneration and not to further commercial distribution," a violation of Mich.Comp.Laws Ann. § 333.7410(7).

### APPLICABLE LAW

Pursuant to the federal civil forfeiture statute,

(a) Subject property. The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited

under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(7). In addition, "All right, title, and interest in property described in subsection (a) shall vest in the United States upon commission of the act giving rise to forfeiture under this section." 21 U.S.C. § 881(h). However, "the government can succeed to no greater interest in the property than that which belonged to the wrongdoer whose actions have justified the seizure." *In re Metmor Fin., Inc.*, 819 F.2d 446, 449 (4th Cir.1987).

The United States Court of Appeals for the Sixth Circuit has ruled that it will not develop a body of federal common law regarding property rights in civil forfeiture proceedings. The court "conclud[ed] that recognition of state laws governing property rights does not contravene the federal forfeiture scheme, and that the application of state law is the most appropriate method of determining the interest of an innocent owner under 21 U.S.C. § 881(a)(7)." *United States v. Certain Real Property Located at 2525 Leroy Lane*, 910 F.2d 343, 347 (6th Cir.1990).

Under Michigan law, "Every conveyance of real estate ..., which shall not be recorded as provided in this chapter, shall be void as against any subsequent *purchaser* in good faith *and for a valuable consideration*, ... whose conveyance shall be first duly recorded." Mich.Comp.Laws Ann. § 565.29 (emphasis added). A mortgage is a conveyance for the purposes of this statute. *Michigan Fire & Marine Ins. Co. v. Hamilton*, 284 Mich. 417, 419, 279 N.W. 884 (1938). A "purchaser" is defined as a "person to whom any estate or interest in real estate, shall be conveyed for a valuable consideration...." Mich.Comp.Laws Ann. § 565.34.

The definition of mortgage is provided in Mich.Comp.Laws Ann. § 565.154 and reads as follows:

Any mortgage of lands worded in substance as follows: 'A.B. mortgages and warrants to C.D., (here describe the premises) to secure the re-payment of' (here recite the sum for which the mortgage is granted, or the notes or other evidence [evidences] of debt, or a description thereof, sought to be secured, also the date of the re-payment), the said mortgage being dated and duly signed, sealed and acknowledged by the grantor, shall be deemed and held to be a good and sufficient mortgage to the grantee, his heirs, assigns, executors and administrators, with warranty from the grantor and his legal representatives, of perfect title in the grantor, and against all previous incumbrances. And if in the above for the words 'and warrant' be omitted, the mortgage shall be good, but without warranty.

Finally, pursuant to Mich.Comp.Laws Ann. § 565.221

All written instruments conveying or mortgaging real estate or any interest therein, hereafter executed, shall state whether any and all male grantors, mortgagors, or other parties executing the instrument are married or single, and the register of deeds of the county in which the instrument is offered for record shall refuse to receive the instrument for record unless it conforms to the provisions of this act.

This provision also allows that an instrument which has been recorded without a recitation of marital status may be supplemented by affidavit and that the recorded affidavit will render the instrument "valid and effectual as if it had contained a statement showing the marital status of the male person or persons executing it." *Id.*

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of

that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## ANALYSIS

■ The claimants' basis for their claim is the innocent owner exception to the civil forfeiture scheme, 21 U.S.C. § 881(a)(7). The government concedes, for the purposes of this motion, that claimants are "innocent," *i.e.*, that they had no knowledge of the illegal acts which took place on the subject property. Government's resp. at 1. However, the government argues that claimants are not "owners" because of their failure to record the alleged mortgage.

The government first argues that the document is not a mortgage, as it lacks the necessary words of conveyance required by Mich.Comp.Laws Ann. § 565.154. The statute itself requires, however, that the mortgage be "worded *in substance* as follows:...." *Id.* (emphasis added). The court finds that the document meets the statutory requirements of a mortgage. The document's first line is "MORTGAGE TERMS." It states that re-payment of the money loaned is secured with the deed to the property. It further states the sum of the mortgage and establishes the date of re-payment and an interest rate. Finally, the document is signed by the grantor.

The government further argues that the document is not a mortgage because it

lacks the requisite statement of marital status pursuant to Mich.Comp.Laws Ann. § 565.221. It appears from the statutory language, however, that the marital statement is required in order for the mortgage to be recorded. A prologue to the statute recites its purpose as: "[a]n act to provide certain requirements in written instruments conveying or mortgaging real estate or any interest therein in which there are male grantors, mortgagors or other parties executing the same to entitle the same *to record." Id.* (emphasis added). In addition, if the legislature had intended the statement of marital status to be a requirement of unrecorded mortgages, they would have included such a requirement in Mich. Comp.Laws Ann. § 565.154. Instead, section 565.221, which requires the statement, follows section 565.201, which is the first section after the title "RECORDING RE-QUIREMENTS."

The government also argues that the document is not a mortgage because it lacks the necessary identification of the drafter, witnesses and notary public as required by Mich.Comp.Laws Ann. § 565.201. However, all of the provisions of section 565.201 clearly are requirements for recording an instrument. In the instant action, there is no dispute that claimants failed to record the mortgage.

Finally, the government argues that claimants' failure to record the mortgage deprives them of any ownership interest in the subject property. In Michigan, however, an unrecorded conveyance, including a mortgage, "shall be void as against any subsequent purchaser in good faith and for a valuable consideration." Mich.Comp. Laws Ann. § 565.29; *Michigan Fire & Marine Ins. Co. v. Hamilton,* 284 Mich. 417, 419, 279 N.W. 884 (1938). Although the federal statutory scheme mandates that title to the property vests in the United States at the time of the illegal act which makes the property guilty, 21 U.S.C. § 881(h), under Michigan law the United States is not a purchaser as defined by Mich.Comp.Laws Ann. § 565.34, not having paid "a valuable consideration" for the property.

The United States Court of Appeals for the Sixth Circuit has held that the "applica-tion of state law is the most appropriate method of determining the interest of an innocent owner under 21 U.S.C. § 881(a)(7)." *United States v. Certain Real Property Located at 2525 Leroy Lane,* 910 F.2d 343, 347 (6th Cir.1990). This court finds that the United States was not a subsequent purchaser as defined by Michigan law; thus, claimants' unrecorded mortgage is not "void as against" the United States' interest in the property. Mich. Comp.Laws Ann. 565.29.

Accordingly, the government succeeds to the same interest in the property which belonged to the wrongdoer whose actions justified the seizure. *In re Metmor Fin., Inc.,* 819 F.2d 446, 449 (4th Cir.1987). Thus, the government's interest in the property is that which Stephen had, *i.e.,* the value of the property above the mortgage of $60,000.00 plus interest.

### ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that claimants' motion for summary judgment is GRANTED, and the extent of the government's interest in 750 East Shore Drive, Whitmore Lake, Michigan, is subject to claimants' unrecorded mortgage.